at all. And we will hear first from Ms. Boudreaux. Good morning. Good morning, Your Honors, and may it please the Court. My name is Kimberly Ulusewis Boudreaux. I'm here appearing on behalf of the Louisiana Department of Health and the Secretary of the Louisiana Department of Health, who I'll refer to as LDH. LDH filed this appeal because the class, as defined by the District Court, fails to meet the various requirements of Rule 23a and Rule 23b-2 of the Federal Rules of Civil Procedure. I want to focus on three major points as far as glaring defects with the class definition, the first being that the class lacks ascertainability, the second is that there lacks commonality among class members, and then the third is the lack of a clear remedy going forward, which violates Rule 23b-2. Plaintiff's allegations in its simplest terms are that LDH fails to provide services to federal law. LDH, in responding to that allegation, is fairly and reasonably asking, what services does LDH not provide, or what services does LDH not provide enough of in accordance with the EPSDT mandate? If I can just jump in for a second to make sure that I understand, this is an acronym-heavy case. Right. So at the first stage, we have an EPSDT mandate. That's what Medicaid says states must provide. Right? Yes. So the EPSDT mandate is short for the Early Periodic Screening, Diagnostic, and Treatment Benefit, and it's one of the benefits that's described under 1905a of the Medicaid Act. In that section of the Medicaid Act, it describes certain mandatory benefits that Medicaid must provide to Medicaid recipients and optional benefits. Okay. So let me just speed in. Hopefully this will be a benefit to both sides. This would be an easier case for me if it were about Medicaid requires a specific service to be provided to children with a diagnosis, in-home nursing, just to pick something at random. I understand that. The difficulty for me is understanding what Medicaid requires the state to provide and what the state here is, it is being alleged that the state is not providing. Because instead of talking about particular services, we're instead talking in acronyms. Okay. So they're EPSDT. Can I look in the Medicaid statute and see what services need to be provided to a child with a particular diagnosis? No, Your Honor. That's a great question. So the EPSDT mandate, what a child is entitled to under the EPSDT mandate depends on that child's provider's recommendations as medically necessary. So the EPSDT mandate... Is this 1396DA? Is that where I need to look? Yes. Yes. Also referred to as section 1905a of the Social Security Act. Not 1905a. Okay. Yes. And in the supplemental authority that plaintiffs introduced, it was an informational bulletin from our regulatory federal agency, the Centers for Medicare and Medicaid Services. And they even explain that the EPSDT benefit for each child has to be looked at on a case-by-case basis because a child would only be entitled to a service under the EPSDT law if, one, that service is one of the category of benefits listed under 1905a, and, two, a doctor or a licensed practitioner has said, this child needs this service, it's medically necessary in order to ameliorate a diagnosed condition that they have. If those two prerequisites are met, then Medicaid must provide that service whether or not it's in our Medicaid state plan document that says how we administer the Medicaid program. Okay. So I think I understand that. But now the next step is IHCBS, an intensive... Tell me what it means. So IHCBS is plaintiff's term and it refers to intensive home and community-based services. And that leads me to my first point, which is the lack of ascertainability in the class definition. Because providers don't recommend something called intensive home and community-based services. And this is a problem because the class is defined as applying to any Medicaid child that is recommended for intensive home and community-based services. But because this isn't a specific service or because it's not a defined term in federal or state law referring to... Well, where can I look to define it? I mean, that, to me, that's a, and I'll ask the other side of that. Where do I go to define IHCBS? The district court did say, and I read the district court's opinion, that that is a commonly understood, I take it as an umbrella term, I don't know. Where do I go to define it? Because that seems crucial to whether the class is ascertainable. Yes, Your Honor. And that, there is no place to define it. It's not defined in federal or state law. Plaintiffs introduced extraneous documents that use the term intensive home and community-based services or a variation, like in-home services, community-based services. But it's not actually defined in any of those documents offered by plaintiffs. Plaintiffs were not arguing that the district court used a definition from one of those documents or should have used a definition. And what the state is saying is that the case as is, if it goes forward and they receive the injunction relief that they're requesting for LDH to provide intensive home and community-based services, we can essentially make up what that means because there's no definition. Well, the district court tried to solve this problem, as I read his opinion, by changing the proposed class definition from something about received to prescribed, recommended by a health care provider. Why doesn't that solve the ascertainability problem? Because that is not an objective measure to identify class members, because providers are not recommending something called intensive home and community-based services. We would need to know what services actually fall under that umbrella to go and look at the Medicaid data and say, okay, service A, B, and C falls under intensive home and community-based services. And so that's how we could identify class members. Now, you do, I think you would concede that there is a district court decision from Illinois, I think, in B. Yes, Your Honor. And it does seem to have approved an almost identical class definition, right? Yes, Your Honor. So do you need to distinguish that case? Are there differences about that case, or do you just think it's wrong? Yes, LDH can distinguish that case easily. So NB versus Jameis, they use the term intensive home and community-based services in the class definition. And in that case, the court found that commonality was met by alleging that plaintiffs all suffered the same violation of law and the same systematic deficiency within the mental health system in Illinois. Here, we have NB versus Perry within the Fifth Circuit that has said, plaintiffs cannot allege the same violation of the same provision of law to meet commonality. Rather, you have to show that the answer to that question can be resolved in one stroke. In the NB versus Jameis case, importantly, the defendants did not object to the term intensive home and community-based services, and the district court adopted the facts alleged in the complaint because the defendants did not object at that point in time. So here, we have LDH objecting from the infancy to the use of the term intensive home and community-based services, and we've also disputed the facts alleged by plaintiffs. We believe that under Fifth Circuit precedent and under the Supreme Court precedent in Walmart versus Dukes, that commonality is not met merely by saying all plaintiffs have suffered system-wide deficiencies in the state program. Well, the district court went, I thought, was very clear in saying that the idea here is that Louisiana is simply not providing, categorically not providing, IHCBS. Yes, Your Honor, and we believe that the district court made a critical and reversible error there because if you read the plaintiff's complaint, that's not what's alleged. The district court tried to cure the commonality defect by saying LDH does not provide any intensive home and community-based services, but plaintiff's complaint instead alleges LDH does not provide some services to some plaintiffs. You're right, but that's what the complaint says. Don't we have to go beyond the complaint for a class cert? Yes, Your Honor, and here, the district court did not conduct the rigorous analysis looking beyond the plaintiff's allegations. The district court looked at some audits, right? It looked at some audits that referred to specialized behavioral health services. None of these documents actually reference intensive home and community-based services. This was another error by the district court where the court stated that specialized behavioral health services are equivalent to intensive home and community-based services, so LDH should know what that means. That term in itself is another umbrella term. Specialized behavioral health services just means that the provider has recommended that to ameliorate a mental health condition as medically necessary to help a child get back to a functioning level to the best of its ability. Do the audits show, I know that's a very broad question because there's several, do they show that Louisiana is simply failing to provide SBH? The audits, they may not make that exact allegation, but they say that we are not providing enough, but the LDH does not have to respond to the audits, but we respond to the audits just to make our position known, and the audits were based on informal surveys with providers, so going to an emergency room and asking providers, what is your take on this situation? It wasn't actually based on Medicaid data showing the various behavioral health services that we actually provide to Medicaid youth, so LDH argues that those audits are really not instructive because they're not based, they don't show how many kids under 21 who are enrolled in Medicaid receive mental health services, and the audit is just based on informal surveys and not Medicaid data. Counsel, let me ask you, I understand your argument and am likewise concerned about the individuality of the claims, not only among the named plaintiffs, but across the board of whoever would be in the class and the uniqueness of their circumstances. There would seem to be a distinction between those who are receiving no services and those, like several of the plaintiffs, that are receiving some services but not all, to which they claim entitlement, but putting that aside, how do you get around the Deepwater Horizon language that the principal requirement for the class is merely a single common contention that enables the class action to generate common answers apt to drive the resolution of the litigation? Isn't that something that would be achievable in the class as drawn up by the district judge here? Well, as drawn up by the district court, firstly, the Deepwater Horizon case dealt with a single act of tortious conduct. There we have an oil rig explosion. We have no single act by LDH or no single policy that the plaintiffs refer to. Well, but I understand the single act is ignoring their obligation under the 1905 obligation under the Medicare law. Wouldn't that be a single act? But if that was how the injunction was framed, if plaintiffs' claims were granted, how would LDH actively enforce or comply with that injunction? We don't have reasonable detail as far under Rule 23b-2 as far as what we would actually need to do to provide intensive home and community-based services because that question is, what is this plaintiff entitled to under 1905a, and have they been recommended for it? Because if so, we have to provide that relief. We don't have a group issue. We really have an individualized issue of what each plaintiff is entitled to. And the plaintiffs have kind of crafted the argument in an abstract way in order to encompass all these individual issues. But when it comes down to actually providing the services that plaintiffs are seeking, that's going to require an individual look at each individual case. The district court can't order LDH to provide a service unless that plaintiff is actually entitled to it under the EPSCT mandate. And we can't figure out whether they're entitled to it under the EPSCT mandate without confirming it's a category listed under 1905a service and that a provider has actually recommended it for that child. You say Deepwater Horizon is a single torturous occurrence. Wouldn't the claimants in that case, though, be the same here in that we had some people who were claiming whether they were oyster fishermen that suffered damages or restaurants that were suffering damages or people whose homes were on the Gulf Coast that suffered damages, don't we also have a difference in terms of even more so, a more diverse set of damage claims than what we have here? So I think that in this case, we might be able to pull common questions, like they're deprived of services, but in determining the merits of plaintiff's claims, they're going to differ for each plaintiff. So for instance, if we have one plaintiff who was recommended for 1905a service, and then they didn't receive that service, but they didn't receive that service because the mother failed to engage with providers or consent to the treatment, then in that situation, a service wasn't provided, but LDH did not fail to provide that service. So we haven't violated the EPSCT mandate. And that's our point is when we get down to determining the liability of LDH and the merits of plaintiff's claims, that's going to become an issue and we're going to have to take an individual look at each plaintiff's case. Is the 1905a service, by definition, IHCBS? No, Your Honor. The 1905a services, they have mandatory services like inpatient services, rehabilitation services. There's no mention of intensive home and community-based services within 1905a. Is it a subset of 1905a service? No, Your Honor. It's not defined anywhere as a subset. The plaintiff's behavioral health services in general, for example, they fall under several different benefit categories of the services listed in 1905a. For instance, they could fall under the rehabilitative services. I see my time is up, Your Honor. Finish your thought and then... And so there is no defined subset or any mention of intensive home and community-based services in 1905a. Thank you, Counsel. You'll have time for rebuttal. Okay. Let's see. Ms. Corsall. Good morning. Good morning, Your Honors. May it please the Court. Abigail Corsall on behalf of the plaintiff's appellees. Your Honors, this case is very straightforward. Children in Louisiana Medicaid who need intensive home and community-based services are not receiving those services. And these are services that their healthcare providers have recommended that they need, but they're not getting them. Now we're talking about three very specific services that fall under the umbrella of intensive home and community-based services here. I take it you're going to try to define IHCBF. I certainly will, Your Honor. Which would be helpful. So three services we're talking about here. One, intensive care management. Two, intensive behavioral services and supports. And three, crisis services. Okay. So I appreciate that. The fact that the adjective intensive is used there, does that mean that a child could be prescribed some kind of care management? I think that's the first one you said. If the child is prescribed care management, does that necessarily mean that it is intensive care management, which would be required to come within IHCBS? It does not, Your Honor. And I think that's part of the confusion that LDH is experiencing. We did plead in our complaint that our plaintiff's class is not receiving intensive home and community-based services. Ever or sometimes? Ever. Ever. Now, it is true that they occasionally receive... We pled that in the complaint. We pled that in the complaint. It's right there in paragraph one. We do concede that our plaintiffs have occasionally received some behavioral health services. They receive occasional medication management and infrequent counseling. But our allegation is that those services do not, they're not of the intensity to rise to the level to constitute intensive. Yes, my question was a little bit of the, sort of coming at it from the opposite way. If a child with a particular mental health diagnosis that falls within the class is prescribed some kind of care management, or I see here in behavioral services, something like that, can LDH know that that child has been prescribed IHCBS, such that if the child doesn't get what he or she has been prescribed, the child isn't getting IHCBS and therefore falls within the class? Yes, Your Honor. Now, as we... But how can they know it if there's some care management that might be non-IHCBS, there's some care management that might be IHCBS, right? That's right, Your Honor. So... So how does LDH know that this particular child would fall within the class? Well, they can know that by reference to the federal agency guidance on intensive services. They can also look at what other states are doing in other state Medicaid programs. And under this court's precedent in SD versus Hood, if another state is covering a service in its Medicaid program, then that is conclusive evidence that Louisiana must cover it in its Medicaid program under EPSDT as well. So it's true that Louisiana does not have a definition of those services, the services we're seeking. That's part of the problem here. That's the lack of a policy that's harming our class. Can you give me an example of a service that would be prescribed to a child with a diagnosis that is always definitely IHCBS? Sure. So intensive care management is its own service, and that can be prescribed. Right, but if a child prescribes something called intensive care management, that would appear in whatever the documentation would be. Yes, Your Honor. Intensive care. Correct. Now, sure, some providers might call it by a different name. I can't say that 100% of the time that you see care management, it could have some other name and still be intensive care management, but certainly if you see intensive care management, you know that is a service that is being prescribed. I mean, that's why I opened my first question to counsel opposite was this would be easier for me if we were talking about something that, at least to my mind, is definite, like some kind of in-home shift nursing, which I think I read a case on about that. This IHCBS seems like a broader umbrella than a specific service, which I think goes to ascertainability. Well, Your Honor, under this court's case precedent in Debremerker, to be ascertainable, the term must simply be adequately defined and clearly ascertainable. And here we've defined it clearly, and it is ascertainable. Defendants are arguing that there's no definition in federal and state law, but that's not the test for ascertainability. We've defined IHCBS to include the three services that I listed, and that's consistent with the courts, the district court here, and with what health care providers prescribe. So if all of those folks understand what the term means, then it must be ascertainable. Is your submission, whether in your complaint or in the, I know that, so with a class cert, the district court I think is required to go beyond the allegations of the complaint, and that's what the district court did here, and that's commendable. So what I want to understand is, is this a case about LDH does not ever provide IHCBS? Yes. It just doesn't? Or is it a case about LDH sometimes fails to provide IHCBS to some children? No, Your Honor. It's the former. Okay. So where do I look? I know, I know your argument is it's the former, and the obvious why, because that makes for a much more solid class definition. Where do I look in the evidence in this record to, if I wanted to agree with you, where would I look in the record? Well, you can look a few places, Your Honor. It is in the reports that the district court relied on, the Mental Health America report from 2016 and the state audit reports from 2017 and 2018. Now it's true that the state audit reports talk about comprehensive specialized behavioral health services. They're using a different term, and our understanding is that term is somewhat broader than intensive home and community-based services. There's not a one-to-one. But they found that the state was failing to provide comprehensive specialized behavioral health services. Always or sometimes? They found a bit of a mix, Your Honor. But certainly they found that the state is largely failing to provide those, and if you look at the district court summary record of appeal, I believe it's 759, the district court goes through some bullet points from the audit reports that go to those contentions. In addition, Your Honor, we had the declarations of our class members, parents, and from three other Louisiana Medicaid beneficiaries or former beneficiaries, all attesting to the fact that they're never receiving these services, and from a social worker from the New Orleans Public Defender's Office who testified to the fact that she sees hundreds of Louisiana Medicaid child beneficiaries who are not receiving these services. So when you look at the record as a whole, as this court is obligated to do under Yates, it supports the contention that LDH is not providing these services. Your Honor, I'd also emphasize, you know, we're at an early stage of this case right now. We have not entered discovery, or we've just entered discovery, but at the time of this court's, the court's, district court's decision, we had not yet entered discovery. So it's understandable that the evidence before the court at that time was more limited, but the court will retain, you know, the obligation to make sure that we're maintaining our class certification as we go on, and of course. So yeah, I read that in the NB case. I think that there is the, certainly if discovery revealed flaws, I guess, that the court could decertify the class. I mean, what would be the, I don't mean to make you argue against yourself, but what would be the circumstances that might come up in discovery that would lead to a decertification of the class? Well, I think it's more likely, Your Honor, that there could be evidence in discovery that could lead to a need for subclassing. Ms. Boudreau gave various examples of reasons that children might not be receiving services. We don't have the evidence as to why children aren't receiving services. That's not necessary for our claims. There's no state of mind element, but it certainly would go to the remedy, and it may be that as we go through discovery, we understand that there's some groups of children who aren't receiving services for one reason, other groups of children who aren't receiving services for another reason, and that may require us to put forth some subclasses so that we can make sure that the remedy is appropriately tailored. Let me back up to something very basic, and I apologize. This is a difficult area for me. Can you explain to me what is the relationship between the services that are mandated as EPSDT services by Medicaid? Certainly. I'm looking at the, I think this is the 1905A services. That's right. What is the relationship between those and IHCBS? Right. So 1905A services are very broad, Your Honor. They're things like physician services, inpatient hospital services. The Medicaid Act does not delineate all of the dozens of, not thousands of services that can fall within each of those categories. As I mentioned, we're talking about three specific services. So intensive care management, there's a case management service under the Medicaid Act that falls there. And then intensive behavioral services and supports and crisis services, those both fall under the rehabilitative services component of the Medicaid Act. Okay. So are you saying that IHCBS is a subset of the 1905A services? Yes. That's right, Your Honor. And I'm sorry to ask this again, but if I want to, I'm going to have to go and sort of satisfy myself that I understand what IHCBS means. And I can, of course, I can look at your complaint. Where else did you say I should go look? Several places. So there's federal agency guidance, Your Honor. In our briefing, we cited a U.S. Department of Health and Human Services guidance as well as Centers for Medicaid and Medicare Services guidance. And then our 28J, we brought forward some more recent guidance from the Centers for Medicaid and Medicare Services. That's the federal Medicaid agency. Also other state Medicaid programs, and we cite several examples of other states that cover these services in our brief. Other courts, of course, you mentioned NB, and there's, I believe, three other courts around the country that have certified similar classes. Oh, really? Is it so? NB, I noticed that the class definition looked very similar to this one. Are the other cases, are they certifying cases based on the IHCBS idea? Yes, Your Honor. So in our 28J letter, we cited to a case from Michigan that recently certified a class with an almost identical definition. There's also the MJ case out of D.C. that uses very similar terminology. Thank you. Counsel, let me ask you, focusing just on the class definition that the district court held, it says, all Medicaid-eligible youth under the age of 21 in the state of Louisiana, one, who have been diagnosed with a mental health or behavioral disorder not attributable to an intellectual or developmental disability, and two, for whom a licensed practitioner of the healing arts has recommended intensive home and community-based services to correct or ameliorate their disorders. Should the definition be further defined by the common injury, in other words, the deprivation of those services, because this is a broad group of people which would encompass people who are receiving services, maybe to their complete satisfaction? Well, Your Honor, our original class definition was defined as children who required such services but were not receiving them. The district court was concerned that that created an impermissible fail-safe class. Now, of course, in this circuit, fail-safe classes can be permitted when appropriate, but the district court made the change to the class definition on that basis. Now, the district court also changed the proposed class definition so as to limit it time-wise to those currently, in other words, we would not prospectively have people joining this class as we go, like a moving target, people who are presumably reaching their 21st birthday out of the class, and likewise, people who are being diagnosed as we go on entering the class. It seems like the district judge, in his order and reasons, didn't want that circumstance and pretty much wanted a fixed picture of who was in the class as of the date of the ruling. Am I correct in my understanding? I don't think so, Your Honor. We are seeking prospective relief in this case. So the injunction, if it's granted, would require LDH to change its policies going forward, and that would apply to anyone who becomes eligible or requires those services in the future. You know, even our class members, some of our declarations now are over a year old. Their medical needs may not be the same as they were at the time that this class was certified, so that would have to be evaluated going forward, but the relief we're seeking is not at the individualized basis. It's really for LDH to create policies to ensure that children get these services when their providers recommend them. Okay, well, my concern is that that is a generalized, systematic relief that's being sought, whereas the class size, when we consider who's in the class and how ascertainable it is, we know there's going to be a group of people, but let's say month to month, we may lose a few hundred people on one end and we may have a couple hundred people that are included. So, again, it's sort of a moving target group of people, though, who are claiming an injury, including people, as we sit here today, that we don't even know that are going to be in the class, and some maybe who aren't even born yet. Is that a fair statement? That's a fair statement, Your Honor, and for that reason, other circuits have held that ascertainability standard is lower for B2 classes just for that reason. It's impossible to know when you have a class that includes future class numbers exactly how many of those may be or who they might be, but because the relief will be granted to the class as a whole, that's less of a concern here. This isn't a case where we need to provide notice to each individual class member or give people the chance to opt out, so the fact that we don't know exactly who is in the class, I don't think prohibits us from certifying the class in this situation. If I may pick up on one thing Judge Engelhardt just said to make sure I understand. Given the change in part two of the class definition by the district court, you had it as they needed them and they were not receiving them, something like that. The district court changed it to for whom a licensed practitioner of the healing arts is recommended, the IHCPS. Are you saying that the class includes diagnosed minors or under 21 who have been recommended the IHCPS and are receiving the IHCPS? Does the class include those people and if so, why would the class need to include them? I suppose theoretically it might, Your Honor. I mean, our contention again is that nobody is receiving the services, so that's kind of a moot point. If there were a child under 21 been diagnosed, sometimes receives IHCPS, sometimes doesn't. Is that person part of the class? I suppose they would be in during the times when they are not receiving the services, Your Honor. Okay. Okay. Thank you. But again, because the relief we're seeking here is prospective and an injunction that would apply to the class as a whole, I don't think those differences should prevent a class certification and certainly wouldn't rise to an abuse of discretion in this case. Why do you need a class? Well, Your Honor, we're seeking, again, prospective injunctive relief to require Louisiana Medicaid to change its policy. I understand that, but if the state is obligated to provide the services and the elder director to do so, then what's the difference in that directive and then having a class which changes over time on a case-by-case basis? Well, Your Honor, I suppose we could have brought this case just on behalf of the named plaintiffs as individuals and could have asked for injunctive relief on behalf of those plaintiffs. There's always the risk, though, that the district court would have limited relief only to our named plaintiffs. We believe that there are many more children who are in the same situation as our plaintiffs, and we want to solve this problem as a whole rather than having to bring an individual case each time we run into a child who's not getting the services they need. I was suggesting that, from my questions, that what you seek by class-wide-based relief is really a broad definition of a—an adequately broad definition of the needed services such that the people—they will provide access, but the enforcement side of that is, as you say, I'm not sure that that's enhanced by talking about being a member of a class that is changing because it's—there are under—there are under directives to provide those services. I don't know if my question makes sense to you, but that's my—goes back to the very basic question of a B-2 class or a general class, all it really does is define the ultimate parameters of the obligation, and inherent in that is that you will have people in and people out. Doesn't that solve some of the problem? The characterization, the original characterization of a B-2 class carries in a long way. Right. Well, here again, where our contentions are that LDH act in a way that was common to the class and they share a common injury. That is what—that is—for the B-2 class, the defendant has to be acting in a common way towards the class, right? That's correct. So is that—is the idea that—and I'll just return to my original point, which is that LDH is simply categorically not providing IHCBS? That's right, Your Honor. Okay. LDH is failing to provide those services, and under this Court's precedent in M.D. v. Perry, failure to provide a policy of action or inaction can give rise to a B-2 class, and that's what we're alleging here, a policy of inaction. I assume you'd agree with me that we couldn't define a class as a state that's simply not providing EBS—well, now I forget the— EPSDT, Your Honor. EPSDT, yes. Yes. That would be overbroad. Yes. You're right, Your Honor. So we have asked for a specific injunction here that the—that LDH provide the three specific services that fall under the umbrella of IHCBS, and that's appropriately specific under this Court's precedent. I see. Okay. Any other questions? Thank you, Counsel. Thank you, Your Honors. Unless you had anything else to say. No. Thank you. Thank you. All right. Ms. Boudreau, you have five minutes for rebuttal. Your Honors, I want to start out by disputing that plaintiff's allegations are that LDH does not provide any intensive home and community-based services. LDH thoroughly briefed that issue in its principle brief and in its reply brief. If you read the plaintiff's second amended complaint, it does not read in that way, nor did plaintiffs raise that position in their response brief to our principle brief. I want to touch on a point that Judge Higginbotham brought up, and that is why is this class a class—a class action? Why is this suit a class action? And it's no secret, as the Fifth Circuit noted in the Chavez case, that a class action can regardless of the merits of the suit. And the way that this suit is framed, it sets plaintiffs up to engage in a phishing expedition against the state agency to basically find claims, find places where maybe LDH is deficient in providing services so it understands and can later put in the class definition specific services that LDH fails to provide. We are urging the court to hold the plaintiffs and the district court accountable to the rigorous standards in Rule 23 to certify the class. I also want to point to the fact that there's a list, and it's referenced in our brief, there's a specialized behavioral health— You maintain that—has written that the state's going to be obligated to provide services that it's not obligated to provide? The state is obligated to provide the service if it's—if it could fall under one of the benefit categories of the statute and if a provider has recommended that statute. I understand that, but my question assumes that the person that's seeking services is under the definition. But what you're really seeking is, ultimately, I think it's some kind of a clarification of what your obligations are. Yes, Your Honor, because if we knew the actual services at issue in the suit, we could adequately defend ourselves and we could also evaluate the merits of plaintiff's claims. So once we're able to actually evaluate the merits of plaintiff's claims because we know the specific services that are recommended— Ms. Corsall, I don't mean to interrupt you, but I want to get this out. Ms. Corsall, when I asked her that, she listed three terms that the plaintiff's claim fall within the IHCBS. Yes. What is your reaction to that? Those subterms, intensive care coordination, there's crisis services, those subterms are also not defined anywhere in state law or other extraneous documents. The only—we do have some behavioral health services that have the name crisis in them, like crisis intervention, crisis response, but just crisis services itself is general. The other two terms, they're not defined anywhere. Plaintiffs do not use language from Louisiana's behavioral health services that we administer in the Medicaid program, and we have several. We have a coordinated system of care, which essentially has wraparound services, case management services, where those wraparound agencies work with the child and their families and their neighbors to ameliorate their conditions. We have a whole specialized behavioral health fee schedule, which lists specific types of services, like psychosocial rehabilitation, community psychiatric support and treatment. Plaintiffs have used these terms, likely inspired by other courts who've used these terms, but these terms do not mean anything vis-a-vis Louisiana Medicaid. They don't point to a specific service. They don't fall under a specific category. What's your reaction to—as we go forward in this, that could be subject to subclasses? I think if—well, my first reaction is that plaintiffs have not raised that at all, but if there was subclasses and actually defined the specific services that suit, then I think we're in a better place to resolve and ascertain, identify the actual class members. But as it is now, we don't have that, and plaintiffs haven't put forth any evidence in lower court proceedings that a provider recommends something called intensive home and community-based services or intensive care coordination or crisis service. There's no—there was none of that demonstrated in the actual trial court proceeding. Any other questions? Thank you, counsel, for a very well-argued case on both sides. We'll take the matter under submission. The court will take a five to ten-minute break while we prepare for the next case. Thank you.